UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MAURICE ROBINSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:24-cv-01341-HEA |
| HEATHER GROSS et al., | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

Plaintiff Maurice Robinson, a self-represented inmate at the Jefferson City Correctional Center, brings this suit under 42 U.S.C. § 1983 for alleged civil rights violations by several correctional officers. (ECF Nos. 1, 15). He moves for leave to proceed *in forma pauperis* (ECF No. 2) and for appointment of counsel (ECF No. 3). For the reasons set forth below, the Court grants Robinson's motion for leave to proceed *in forma pauperis*, assesses an initial partial filing fee of $8.67, denies the motion for appointment of counsel without prejudice, and orders Robinson to file a second amended complaint in accordance with the Court's instructions.

**I.  Initial Partial Filing Fee**

Generally, a party must pay a filing fee when initiating any civil action, suit, or proceeding in this Court. 28 U.S.C. § 1914. However, courts may waive this fee for individuals who demonstrate an inability to pay. 28 U.S.C. § 1915(a)(1). When a court grants such a waiver, the plaintiff may proceed *in forma pauperis* or "IFP." To obtain IFP status, a non-prisoner litigant must submit an affidavit demonstrating their inability to pay the filing fee. *Id*. If the Court determines that the litigant lacks sufficient financial resources, the action may proceed without prepayment of fees.

Different requirements apply to prisoner litigants under the Prisoner Litigation Reform Act ("PLRA"). In addition to the standard IFP affidavit, prisoners must submit a certified copy of their inmate account statement reflecting the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(a)(2). If the Court finds that the prisoner lacks sufficient funds, it will assess an initial partial filing fee equal to 20% of either the prisoner's average monthly deposits or average monthly balance, whichever is greater. 28 U.S.C. § 1915(b)(1). After this initial payment, the prisoner must make monthly payments equal to 20% of the preceding month's income until the fee is paid in full. 28 U.S.C. § 1915(b)(2). The prison must forward these payments to the Court each time the account exceeds $10. *Id*. Even if the Court grants IFP status, a prisoner litigant must pay the entire filing fee over time. *See Crawford-El v. Britton*, 523 U.S. 574, 596 (1998) (the PLRA "requires all inmates to pay filing fees[.]"); *Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir. 1998) ("The purpose of the Act was to require all prisoner-litigants to pay filing fees in full[.]").

In support of his motion to proceed IFP, Robinson submitted an inmate account statement that reflects deposit activity from January 23, 2024, through July 24, 2024. (ECF No. 6). While the statement does not cover the six-month period immediately preceding the filing of the complaint, the Court calculates an average monthly deposit of $43.33 for the most recent six months shown (February 2024–July 2024). Therefore, the Court assesses an initial partial filing fee of $8.67, representing 20% of Robinson's average monthly deposit over that time. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (explaining that when a prisoner is unable to provide the court with a certified copy of his inmate account statement, the court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances").

**II.     Background**

Robinson filed an amended complaint on March 13, 2025. (ECF No. 15). The amended complaint completely replaces the original. *See* Fed. R. Civ. P. 15(a)(1)(B)*; In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005).

Robinson is incarcerated at the Jefferson City Correctional Center, but his allegations concern events at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC") in Bonne Terre, Missouri. He names 29 prison officials as defendants, all in their individual capacities.

On August 16, 2023, ERDCC officials removed Robinson and several other inmates from general population and placed them in administrative segregation as part of an investigation into alleged drug smuggling by an unidentified individual. Caseworker Heather Gross allegedly labeled Robinson a "snitch" at this time, which caused other inmates to issue threats against Robinson. Gross, Functional Unit Manager Nathan Sumpter, and Lieutenant Brent Renk allegedly knew of these threats.

Robinson states that on November 25, 2023, Lieutenant Megan Shields came to his cell and said, "Cuff up, snitch, or I'll throw so many mace bombs in there, the prisoners won't have to kill you—I'll do it for them!" Shields then moved Robinson to a one-man cell in the Mental Health Unit, which Robinson claims was retaliatory. He reports that while housed there he endured sleep deprivation and mental anguish from the constant banging of nearby mentally ill inmates. He also claims that Qualified Mental Health Professional Jeffery Bryant denied his requests for mental health treatment.

That same month, Robinson asserts that Caseworker Gross shared one of his handwritten notes with a gang-affiliated inmate. The note requested a meeting with staff about conspiracies

3

involving murder, drug trafficking, and contraband cell phones. Robinson claims that Gross shared the note to provoke retaliation.

In January 2024, Investigator Unknown Wagner allegedly told Robinson that he would be written up for possessing tobacco. But on January 23, 2024, Correctional Officer Bobby Swann charged Robinson with introducing a controlled substance into the institution. Caseworker Unknown Heiman found Robinson guilty. Robinson appealed to Warden Richard Adams, who denied the appeal.

Robinson states that, despite knowing he was under threat, officials placed him into general population on February 16, 2024. He says that Functional Unit Manager Theodore Eaton, Caseworker Sarah Cook, and Caseworker Edmund Jennings had received correspondence from another inmate warning of the danger to Robinson. A few days later, Sergeants Catlin Brasill, Joseph Grimes, Jason Ratliff, and Andrew Skolo encouraged Robinson to seek protective custody because the Stretch Gang had placed a hit on him. Robinson does not state whether he requested protective custody but contends that defendants nonetheless kept him in general population.

On March 11, 2024, officials placed Robinson in a cell with a Stretch Gang member who attempted to kill him by injecting him with fentanyl. Robinson overdosed and officials administered Narcan. Robinson states that Sergeant Dallan Rector and QMHP Bryant remarked that the incident was the result of the gang's hit. Robinson claims that the injection left his right hand severely injured, causing constant pain and loss of functionality.

After the incident, Correctional Officer Patrick Wilson charged Robinson with possession of drug paraphernalia, and Sergeant Grimes charged him with possession of a weapon. According to Robinson, he was found guilty of both violations and returned to administrative segregation.

4

While in segregation, Robinson claims that he requested medical treatment from Health Service Administrator Richard Espinoza. He does not state whether he received treatment. He also alleges that, during this stint in segregation, Caseworker Dustin Peters called him a snitch in front of 72 other inmates and that Sergeant Skolo retaliated against him by confiscating his address book.

Robinson states that on June 16, 2024, shortly after speaking with an investigator about staff misconduct, Sergeants Skolo and Unknown Motley moved him to another cell and placed him on property-removal status without justification. He claims that officials then confiscated and discarded his belongings, including clothing, bedding, family photographs, and writing supplies.

Two days later, Robinson threatened self-harm and tied a sheet around his neck. He alleges that Correctional Officer Unknown Sansauce and Sergeant Kevin Dahmm initially encouraged him to carry out the threat before ultimately placing him on suicide watch. Robinson says that once on suicide watch, staff failed to conduct 30-minute checks in violation of prison policy and housed him in a cell without a surveillance camera.

Robinson seeks declaratory judgment, as well as compensatory and punitive damages.

**III.    Discussion**

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). Rule 20(a) permits the joinder of multiple defendants in one action only if the claims arise from the same transaction or occurrence and share a common question of law or fact.

Robinson's amended complaint does not comply with these rules. His 28-page pleading—consisting of the Court form plus 18 additional handwritten pages—presents a sprawling narrative

that is neither short nor plain. The amended complaint improperly joins 29 defendants based on claims that do not arise from the same transaction or occurrence, and do not present a common question of law or fact. Such a "buckshot" complaint violates both Rules 8 and 20. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that a "buckshot complaint" joining unrelated claims against multiple defendants should be rejected).

Accordingly, the Court orders Robinson to file a second amended complaint on the Court's form, limited to related claims against properly joined defendants and consistent with the following instructions.

### Organization and clarity

Robinson's second amended complaint shall include a short and plain statement of the claim showing that he is entitled to relief. All factual allegations must be simple, concise, and direct. Robinson may attach additional pages, if necessary, but must organize his allegations into clear, numbered paragraphs. Each paragraph should address a specific claim or event in a logical and coherent manner, with a clear connection to the legal claims asserted. Robinson should avoid attaching lengthy exhibits, narrative supplements, or duplicative handwritten pages unless they are essential to support a specific allegation. Robinson should not simply attach a copy of his prior allegations.

### Joinder of defendants

Robinson names 29 defendants in this action. Under Rule 20(a), multiple defendants may only be joined in a single action if the claims against them arise from the same transaction or occurrence and share a common question of law or fact. The operative complaint does not meet this standard. If Robinson chooses to name more than one defendant in his second amended

complaint, he may only include claims that arise from the same incident or series of incidents and share a common question of law or fact.

### Identification of claims

In his second amended complaint, Robinson shall identify, to the best of his ability, the specific legal claims he is asserting, and shall link each claim to the appropriate facts. He must plead facts demonstrating each defendant's personal involvement in the events that allegedly violated his constitutional rights. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). Conclusory allegations about a defendant's supervisory role will not suffice. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). Robinson shall clearly specify whether his claims relate to conditions of confinement, excessive force, retaliation, failure to protect, or other civil rights violations. For each claim, Robinson must describe the injury or harm he suffered as a result of the alleged violation. He shall also identify the specific relief he seeks.

### Effect of amended complaint

Robinson's second amended complaint will completely replace both his original and amended complaints. Any claims not re-alleged will be deemed abandoned.

### Review under 28 U.S.C. § 1915

Because Robinson is proceeding IFP, the Court will review his second amended complaint under 28 U.S.C. § 1915(e)(2). That statute requires the Court to dismiss a complaint if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. While the Court must construe self-represented complaints liberally, Robinson must still allege specific facts showing a plausible entitlement to relief. If Robinson does not file a second amended complaint on the Court-provided

7

form within 30 days in accordance with these instructions, the Court will dismiss this action without prejudice and without further notice.

### IV.     Motion for Appointment of Counsel

The Court now considers Robinson's motion for appointment of counsel (ECF No. 3). Civil litigants do not have a constitutional or statutory right to appointed counsel. *Watson v. Moss*, 619 F.2d 775, 776 (8th Cir. 1980); *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

Having considered these factors, the Court finds that the appointment of counsel is not warranted at this time. Neither the factual nor legal issues in this case appear to be complex. Additionally, Robinson has yet to file a complaint that survives review under 28 U.S.C. § 1915(e)(2). The Court may entertain future motions for appointment of counsel as the case progresses.

### V.     Conclusion

For the foregoing reasons, the Court grants Robinson's motion for leave to proceed *in forma pauperis* and assesses an initial partial filing fee of $8.67. The Court denies Robinson's

motion for appointment of counsel without prejudice and orders him to file a second amended complaint in accordance with the instructions above.

Accordingly,

**IT IS HEREBY ORDERED** that Robinson's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Robinson shall, **within 30 days** of the date of this order, pay an initial partial filing fee of **$8.67**. Robinson shall make the remittance payable to "Clerk, United States District Court," and include: (1) his name, (2) his prison registration number, (3) the case number, and (4) a statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Robinson's motion for appointment of counsel (ECF No. 3) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that all other pending motions (ECF Nos. 8, 9, 10, 17) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Robinson shall, **within 30 days** of the date of this order, file a second amended complaint on the included form in accordance with the Court's instructions.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to Robinson a copy of the Court's Prisoner Civil Rights Complaint form.

Robinson's failure to comply with this order will result in the dismissal of this action without prejudice and without further notice.

Dated this 10th day of September, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE